UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KAMERRA BROWN, Plaintiff, | * | Case Number: 4:26-cv-4171 |
| vs. | * | **COMPLAINT AND DEMAND FOR JURY TRIAL** |
| SOUTH DAKOTA BOARD OF REGENTS, Defendant. | * | |

The Plaintiff, Kamerra Brown, through her undersigned attorneys, states and alleges as follows in support of her Complaint:

**PARTIES**

1. Plaintiff, Kamerra Brown, is a resident of Virginia. She served as the Head Equestrian Coach at South Dakota State University from August 2024 until her wrongful termination in September 2025.

2. Defendant South Dakota State University ("SDSU") is a public university located in Brookings, South Dakota.

3. Defendant South Dakota Board of Regents ("BOR") is the governing board that manages and controls public universities in South Dakota, including SDSU.

4. At all relevant times, the BOR operated and controlled South Dakota State University, pursuant to SDCL 13-58-1 and SDCL 13-49-11.

## JURISDICTION & VENUE

5. This action arises under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S. C. § 2000e et. Seq. ("Title VII"). As a result, this Court has original jurisdiction pursuant to 28 U.S.C. §1331.

6. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in the Southern Division of the District of South Dakota.

## FACTUAL ALLEGATIONS

7. More than thirty days prior to the institution of the is lawsuit, Kamerra Brown filed a charge of discrimination with the Equal Employment Opportunity Commission alleging violations of Title VII of the Civil Rights Act of 1964. All conditions precedent to the institution of this lawsuit have been fulfilled.

8. Since at least August 2025, Defendant has engaged in unlawful employment practices in violation of Title VII by participating in conduct that had the effect of subjecting Brown to race discrimination and for unlawfully retaliating against Brown for appealing the BOR's decision to terminate Brown's employment and for filing a complaint with the BOR's equal employment opportunity compliance department.

9. Kamerra Brown was hired by SDSU as the head coach for the Equestrian Team on August 7, 2024. At the time, Brown was the first African American head coach in collegiate equestrian history and the first African American head coach at SDSU in any sport.

10. On May 21, 2025, SDSU extended and Brown accepted, a Non-Faculty Exempt Contract, to remain the "Head Coach-Equestrian" until June 21, 2026.

11. At all relevant times, Brown was qualified to perform the essential functions of her position, and her performance evaluation reflected that Brown met or exceeded expectations in all categories that were evaluated.

12. Brown performed her job successfully until her discharge on September 17, 2025.

13. On May 12, 2025, the Equestrian staff held a meeting to discuss having one of the equestrian horses, Louie, transported to the home of one of the student athletes in Indiana for the summer for additional training and work.

14. On May 19, 2025, the Equestrian staff approved the plan to have Louie spend the summer with the student athlete, pending approval from the student athlete's parents.

15. On May 19, the student athlete's mother confirmed that they would take Louie for the summer.

16. On May 20, the student athlete's mother informed Brown that they had arranged for Louie to be picked up and transported to Indiana, and that the shipper would be in Brookings to pick up Louie that afternoon.

17. Upon learning of the expedited timeframe, Brown consulted with the SDSU Barn Manager and Director of Equestrian Operations, Rachel Boone, to inquire if SDSU had an equine infectious anemia test form (a/k/a a Coggins form) for Louie.

18. As the Barn Manager and Director of Equestrian Operations, Boone was responsible for overseeing horse health and horse paperwork.

19. At that time, Boone was employed at SDSU since 2012 and her job for over a decade required her to keep track of the Coggins and handle issues that involve the same.

20. Boone informed Brown that SDSU did not have a Coggins for Louie.

21. In response, Brown contacted SDSU's veterinarian, informed her that SDSU did not have a Coggins for Louie, and inquired whether she could perform a Coggins for Louie.

22. The veterinarian declined to prepare the Coggins, as she was too busy, but advised that if Brown could get a blood draw or submit a Coggins form, that the veterinarian could prepare the health certificate.

23. Brown informed Boone of her conversation with the veterinarian.

24. In response, Boone provided Brown with a Coggins form for a different horse and suggested that Brown white out the other horse's name and put Louie's name there. Boone had worked with SDSU's equestrian program since 2012 and was more familiar with the veterinarians utilized by the program and their protocols than Brown was.

25. Brown followed Boone's suggestion, as Brown knew the veterinarian was aware that the Coggins needed to be completed, that the veterinarian was familiar with Louie and knew he was healthy, and that it was common in the industry to permit shipment of horses with a "Coggins pending" notification, which Brown anticipated the veterinarian would provide

26. In response, the veterinarian declined to sign off on the Coggins.

27. Therefore, that Coggins form was discarded and was not used to transport Louie.

28. Instead, Boone informed Brown that there was another local veterinary clinic, Big Sioux Veterinary Care, that could perform the Coggins on Louie. Boone then took Louie to Big Sioux Veterinary Care to have the Coggins performed.

29. Boone handled all of the paperwork and testing at the veterinarian.

30. Boone then prepared Louie for shipping and provided the paperwork to the shipper.

31. Thereafter, Louie was transported to Indiana for the summer and returned to SDSU for the fall semester without issue.

32. Louie tested negative for equine infectious anemia.

33. Brown did not see Louie's Coggins or health paperwork before he was picked up by the shipper, as Boone handled those aspects, consistent with Boone's established job duties.

34. On August 22, 2025, Brown received "Initial Notice of Intended Disciplinary Action for Misconduct Reasons – Termination" from SDSU Associate Athletic Director Holly Van Vlymen, which wrongly contended that Brown falsified documentation in order to ship Louie to Indiana, and advised of SDSU's contention that such alleged conduct violated SDBOR Policy 4.3.1 §§ 5.1.1.1, 5.1.1.3, 5.1.1.4, 5.1.1.7, 5.1.1.16 and SDBOR Policy 4.8.2 § 1.1.3.

35. On September 19, 2025, SDSU terminated Brown's employment, under the false pretext that such termination was premised upon Brown falsifying a Coggins form that was never executed or used.

36. On October 1, 2025, Brown filed a Grievance with SDSU President Barry H. Dunn.

37. On October 1, 2025, Brown also filed a Grievance with SDSU's EO Compliance Coordinator, advising that Ms. Van Vlymen's final determination was factually incorrect and subjected Brown to disparate treatment and discipline based upon her race, in violation of Title VII of the Civil Rights Act of 1964 and University Policy.

38. Thereafter, while her Grievance and EO complaint were pending, on or about October 28, 2025, Holly Van Vlymen initiated a criminal complaint against Brown, alleging that Brown stole from SDSU by using SDSU resources to pay for veterinary bills and boarding for

two of Brown's horses that were leased to SDSU and used in connection with the SDSU Equestrian program.

39. On November 17, 2025, President Dunn denied Brown's grievance and affirmed her termination.

40. In January 2026, Brown was indicted on felony charges of grand theft based on Van Vlymen's criminal complaint.

41. Multiple news outlets published the indictment and the charges of grand theft against Brown.

42. As a result of the indictment, Brown's reputation was tarnished, she lost job opportunities, and suffered public humiliation.

43. On May 11, 2026, the South Dakota Attorney General's Office dismissed the criminal charges against Brown, acknowledging that Brown's conduct was approved by current or previous SDSU staff. A copy of the Dismissal is attached hereto as Exhibit A.

44. Despite not violating any Policies or laws, Brown's employment was terminated.

45. Whereas, when a white coach was arrested and convicted for driving while under the influence of alcohol, that coach was not disciplined; he was not terminated.

46. Despite suggesting Brown's course of conduct and being responsible for Louie's paperwork and shipment, upon information and belief, Boone's employment at SDSU was not terminated.

47. When Brown filed a grievance, alleging racial discrimination, SDSU retaliated by initiating a frivolous criminal complaint against Brown.

## COUNT 1
## Race/Sex Discrimination in Violation of Title VII
## (Disparate Treatment)

48. Paragraphs 1 through 47 are incorporated herein as it set forth in full.

49. Title VII prohibits discrimination against any individual with respect to the "terms, conditions, or privileges of employment, because of such individual's race, color, . . ., sex, . . . ."

50. The Defendant's conduct described herein, including its disparate treatment and ultimate termination of Brown, violated Title VII.

51. White employees of SDSU admitted to violating the law were not punished or terminated.

52. Specifically, former head football coach, John Stiegelmeier, admitted to violating the law and placing the public in danger by driving under the influence of alcohol.

53. Stiegelmeier's conduct violated the law and SDBOR Policies.

54. Stiegelmeier's employment was not terminated.

55. Upon information and belief, SDSU did not report alleged criminal activity against white SDSU employees that boarded their own horses, which were leased to the SDSU equestrian program or used for the benefit of the equestrian program, at the SDSU stables, nor was the employment of the white employees terminated for such conduct.

56. The Defendant's conduct was malicious and done with reckless disregard for Brown's rights.

57. As a result of the Defendant's conduct, Brown has suffered and continues to suffer loss of income, mental anguish, embarrassment, and other damages in an amount to be determined at trial.

## COUNT 2

## Retaliation in Violation of Title VII

58. Paragraphs 1 through 56 are incorporated herein as it set forth in full.

59. Title VII prohibits employers from discriminating against any employee because that employee has made a charge of discrimination.

60. Upon learning that Brown had filed a charge of discrimination with SDSU's EO Coordinator, SDSU and Van Vlymen retaliated against Brown by filing a baseless criminal complaint against Brown, which resulted in Brown being arrested and prosecuted for grand theft.

61. At the time, Van Vlymen knew or had reason to know that her allegations against Brown had no merit and that Brown's alleged criminal conduct was approved, accepted, and routine within SDSU.

62. After Van Vlymen initiated the criminal complaint, SDSU denied Brown's grievance and affirmed her termination.

63. The Defendant's conduct was malicious and done with reckless disregard for Brown's rights.

64. As a result of Defendant's conduct, Brown has suffered and continues to suffer from loss of income, mental anguish, embarrassment, and other damages in an amount to be determined at trial.

WHEREFORE, Plaintiff Kamerra Brown prays for judgment against Defendant as follows:

1. For compensatory damages arising from past, present and future loss of income, including loss of benefits, loss of career development, mental anguish, and loss of enjoyment of life in an amount to be determined at trial;
2. For punitive damages arising from Defendant's conduct toward Brown in an amount to be determined at trial;

3. For an order of the Court awarding Plaintiff her back pay, front pay, attorney fees, costs and disbursements incurred herein as allowed by law;
4. For such other and further relief as the Court deems just and equitable.

Dated at Sioux Falls, South Dakota, this 10th day of September, 2026.

EVANS, HAIGH & ARNDT, L.L.P.

Delia M. Druley
Ryan W.W. Redd
101 E. 11th Street, Suite 201
PO Box 2790
Sioux Falls, SD 57101-2790
Telephone: (605) 275-9599
Facsimile: (605) 275-9602
Email: ddruley@ehalawyers.com
rredd@ehalawyers.com
*Attorneys for Plaintiff*

**DEMAND FOR JURY TRIAL**

The Plaintiff respectfully requests a jury trial on all issues triable to a jury.

Delia M. Druley

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Kamerra Brown

**(b)** County of Residence of First Listed Plaintiff ______
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Evans, Haigh & Arndt, LLP - 605-275-9599
225 East 11th St., Ste 201, PO Box 2790

## DEFENDANTS

South Dakota Board of Regents

County of Residence of First Listed Defendant ______
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*

*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**
- [ ] 110 Insurance
- [ ] 120 Marine
- [ ] 130 Miller Act
- [ ] 140 Negotiable Instrument
- [ ] 150 Recovery of Overpayment & Enforcement of Judgment
- [ ] 151 Medicare Act
- [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- [ ] 153 Recovery of Overpayment of Veteran's Benefits
- [ ] 160 Stockholders' Suits
- [ ] 190 Other Contract
- [ ] 195 Contract Product Liability
- [ ] 196 Franchise

**REAL PROPERTY**
- [ ] 210 Land Condemnation
- [ ] 220 Foreclosure
- [ ] 230 Rent Lease & Ejectment
- [ ] 240 Torts to Land
- [ ] 245 Tort Product Liability
- [ ] 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- [ ] 310 Airplane
- [ ] 315 Airplane Product Liability
- [ ] 320 Assault, Libel & Slander
- [ ] 330 Federal Employers' Liability
- [ ] 340 Marine
- [ ] 345 Marine Product Liability
- [ ] 350 Motor Vehicle
- [ ] 355 Motor Vehicle Product Liability
- [ ] 360 Other Personal Injury
- [ ] 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- [ ] 365 Personal Injury - Product Liability
- [ ] 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- [ ] 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- [ ] 370 Other Fraud
- [ ] 371 Truth in Lending
- [ ] 380 Other Personal Property Damage
- [ ] 385 Property Damage Product Liability

**CIVIL RIGHTS**
- [ ] 440 Other Civil Rights
- [ ] 441 Voting
- [x] 442 Employment
- [ ] 443 Housing/ Accommodations
- [ ] 445 Amer. w/Disabilities - Employment
- [ ] 446 Amer. w/Disabilities - Other
- [ ] 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- [ ] 463 Alien Detainee
- [ ] 510 Motions to Vacate Sentence
- [ ] 530 General
- [ ] 535 Death Penalty

Other:
- [ ] 540 Mandamus & Other
- [ ] 550 Civil Rights
- [ ] 555 Prison Condition
- [ ] 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- [ ] 625 Drug Related Seizure of Property 21 USC 881
- [ ] 690 Other

**LABOR**
- [ ] 710 Fair Labor Standards Act
- [ ] 720 Labor/Management Relations
- [ ] 740 Railway Labor Act
- [ ] 751 Family and Medical Leave Act
- [ ] 790 Other Labor Litigation
- [ ] 791 Employee Retirement Income Security Act

**IMMIGRATION**
- [ ] 462 Naturalization Application
- [ ] 465 Other Immigration Actions

**BANKRUPTCY**
- [ ] 422 Appeal 28 USC 158
- [ ] 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**
- [ ] 820 Copyrights
- [ ] 830 Patent
- [ ] 835 Patent - Abbreviated New Drug Application
- [ ] 840 Trademark
- [ ] 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**
- [ ] 861 HIA (1395ff)
- [ ] 862 Black Lung (923)
- [ ] 863 DIWC/DIWW (405(g))
- [ ] 864 SSID Title XVI
- [ ] 865 RSI (405(g))

**FEDERAL TAX SUITS**
- [ ] 870 Taxes (U.S. Plaintiff or Defendant)
- [ ] 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- [ ] 375 False Claims Act
- [ ] 376 Qui Tam (31 USC 3729(a))
- [ ] 400 State Reapportionment
- [ ] 410 Antitrust
- [ ] 430 Banks and Banking
- [ ] 450 Commerce
- [ ] 460 Deportation
- [ ] 470 Racketeer Influenced and Corrupt Organizations
- [ ] 480 Consumer Credit (15 USC 1681 or 1692)
- [ ] 485 Telephone Consumer Protection Act
- [ ] 490 Cable/Sat TV
- [ ] 850 Securities/Commodities/ Exchange
- [ ] 890 Other Statutory Actions
- [ ] 891 Agricultural Acts
- [ ] 893 Environmental Matters
- [ ] 895 Freedom of Information Act
- [ ] 896 Arbitration
- [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- [ ] 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S. C. § 2000e et. Seq. ("Title VII")

Brief description of cause:
Racial discrimination and retaliation in violation of Title VII

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** [x] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE ______ DOCKET NUMBER ______

DATE 9-10-26 SIGNATURE OF ATTORNEY OF RECORD [signature]

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

JS 44 Reverse (Rev. 03/24)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)** **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b)** **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c)** **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.** **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.** **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.** **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.** **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statute.

**VI.** **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553 Brief Description: Unauthorized reception of cable service.

**VII.** **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.** **Related Cases.** This section of the JS 44 is used to reference related cases, if any. If there are related cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.